SAVOY, Judge.
Defendant has appealed to this court from a judgment of the district court awarding plaintiff compensation at the maximum weekly rate authorized under the Workmen’s Compensation Act for total and permanent disability.
Counsel for plaintiff and defendant entered into a stipulation in the instant case to the following effect: that on January 2, 1962, plaintiff was employed at the Pitt Grill, an eating establishment in the City of Lake Charles, Louisiana; that at about 5:00 A.M. on the above date an accident occurred when an automobile driven by an unnamed party crashed into the Pitt Grill causing plaintiff certain injuries. It was also stipulated that the defendant had a standard workmen’s compensation policy in favor of the owner of the Pitt Grill, and that if plaintiff is entitled to compensation, she is entitled to compensation at the maximum rate allowed under the Workmen’s Compensation Act of this State.
The only issue to be determined by this Court is whether plaintiff is entitled to compensation payments beyond October 12, 1962, the date when defendant stopped paying compensation to plaintiff.
Plaintiff suffered physical injuries as a result of the accident. She was seen by Drs. *169 Eli Sorkow and Fritz Lacour, general practitioners; Drs. George P. Schneider, Edward W. Phillips, Jr., and Jerome Ambris-ter, orthopedic surgeons; and Dr. Gilíes R. Morin, a psychiatrist. All of the general practitioners and the orthopedic specialists agreed that plaintiff had recovered from her physical injuries of January 2, 1962.
The basic question before this Court is whether plaintiff is presently suffering from a mental condition resulting from the accident and having a causal connection therewith so as to prevent her from returning to and performing the work she was doing prior to the accident, namely, a short order cook.
The only expert on mental illnesses who testified at the trial was Dr. Gilíes R. Morin. Plaintiff was examined by Dr. Morin and complained of pain and stated that she was nervous. He found plaintiff tense with a certain degree of anxiety. The doctor found plaintiff had a schizoid personality which he described as one living a lonely and withdrawn life. When Dr. Morin saw plaintiff on February 27th and March 11th, 1963, he was of the opinion that the accident which she suffered created a marked amount of anxiety, and he felt this was due to plaintiff’s loss of making a living. Plaintiff was again seen by Dr. Morin on August 27, 1963, and he found considerable deterioration from a psychiatric point of view. He did not think plaintiff could return to her former employment.
Upon examination by the court, the following testimony was elicited from Dr. Morin:
“THE COURT: Dr. Morin, let me see if I understand your testimony. In your opinion this lady is suffering from a marked anxiety which was caused by the accident, or in some manner the accident contributed to it.
“THE WITNESS: That’s right, sir.
“THE COURT : And is it your opinion that because of this marked anxiety she is unable to perform her usual work as a fry cook and waitress?
“THE WITNESS: Well, you see, of course, at this point it is difficult to tell. I mean now litigation, I think, plays a role in terms of the anxiety. But I think initially the thing that triggered off the anxiety was this threatened loss of income. Here is a person who has worked hard all of her life, and something happens that she can no longer work. Now this she may have recovered from for a little while. There might have been residuals of it, and then, of course, the litigation and so on is an additional trauma. So at this point it is difficult to say just how much anxiety is litigation, how much is residual from the accident.
“THE COURT: But in your opinion the accident has definitely some effect in causing this anxiety.
“THE WITNESS: In triggering it off, yes, sir.
“THE COURT: Let me ask you this. Anxiety, I am sure, takes all sorts of form. What is it that causes her to not be able to do the work in your opinion ?
“THE WITNESS: For example, there’s a term I used called somatization. What does this mean? This means that the anxiety, this kind of anxiety,—
“THE COURT: Nervousness?
“THE WITNESS : This nervousness is focused in a somatic way. It comes out in a pain or in an ache, or something of that nature, so that the person may not necessarily be tremulous, but there is still a high level of anxiety. This anxiety comes out readily in the psychometric tests. A person can come to me, for example, and say they have terrible pains. This is a subjective thing, and they can say they are nervous, very nervous. Again, this is *170 subjective. This is the reason why we always have the psychological tests. Because they are not aware of psychological tests, they don’t know the meaning of it. This is something that is standardized. Of course, it is not as black and white as an X-ray would be, but it comes as close to it as we can in this particular business.
“THE COURT: As I understand it, these pains that Mrs. Murphy described to you, in your opinion they can be ’ explained as the result of the anxiety.
“THE WITNESS: That’s right, sir.
“THE COURT: In fact, in her own mind she is actually suffering these pains.
“THE WITNESS : That’s right. She doesn’t imagine the pain. v
“THE COURT: What’s the difference between that and a traumatic neurosis ?
“THE WITNESS: Well, * * *
“THE COURT: Or conversion hysteria?
“THE WITNESS: Well, number one, we would find instead of the schizoid personality * * *
“THE COURT: What is a schizoid personality?
“THE WITNESS: Schizoid is a person who is a lonely person, generally kind of withdrawn and so on, is not a gregarious kind of out-going person. This is a schizoid, a schizoid adjustment. Had we * * * If it were, say, a conversion reaction, we would have found, instead of a schizoid personality, we would have found a hysterical personality, which gives us an entirely different picture in terms of the psychometric tests.
“THE COURT: In other words, her personality would change from being a withdrawn person to a gregarious person, or * * *
“THE WITNESS: No, no. The teste that we gave her, the different kinds of drawings, for example, that we ask them to do, would be entirely different. The drawings that she presented to us are very primitive. You see this drawing? A hysterical person would not put out this kind of a drawing. The second time that we saw her we felt there was quite a bit of regression. Here is a drawing at this point, see? This is a drawing of a three or four-year-old in terms of psychological development. A hysteric would not come out with this kind of a drawing.
“THE COURT: The point I am getting at from a layman’s standpoint, can you have a pain in your back, which can be explained on the basis of either a conversion hysteria on the one hand, or an anxiety on the other, or would it be the same?
“THE WITNESS : If a person is suffering from a back pain, they are not imagining this pain. This is as terrible a pain as if they had a broken back, you see? Because all the tension, the anxiety they feel, is focused in this one area.
“THE COURT: Doesn’t that also occur as the result of a conversion hysteria, that’s what I am getting at?
“THE WITNESS: Yes, it could.
“THE COURT: In other words, so far as the symptoms are concerned, it could be caused either by a conversion hysteria or by anxiety.
“THE WITNESS : That’s, right.
“THE COURT: As I appreciate your testimony — correct me if I’m wrong— in your opinion you feel that Mrs. Murphy is suffering these pains in her back and other portions of the body which these other physicians cannot explain organically.
“THE WITNESS: That’s right.
*171 “THE COURT: And in your opinion it is caused by marked anxiety.
“THE WITNESS: That’s right, sir.
“THE COURT: Which was brought about to some extent by this accident which she described.
“THE WITNESS: That’s right, sir.
“THE COURT: And possibly by her being involved in this litigation as well.
“THE WITNESS: Absolutely.
“THE COURT: You have no way of knowing with any degree of certainty when she will recover, if ever.
“THE WITNESS: This is difficult to say.”
Counsel for defendant contends that the case of Lambert v. Wolf’s, Inc., (La.App., 3 Cir., 1961), 132 So.2d 522, is very similar to the instant case. In the Lambert case, supra, recovery was not allowed.
Counsel for plaintiff, on the other hand, contends that the case of Goodley v. Brunet, (La.App., 3 Cir., 1963), 150 So.2d 804, and the cases cited therein, are controlling.
This Court is of the opinion that the Lambert case, supra, is distinguishable from the case at bar, for in that case films were taken on three or four occasions showing plaintiff doing heavy manual work, and the court was of the opinion that plaintiff was a malingerer.
To sum up the testimony of Dr. Morin, at the trial of this cause, he was of the opinion that plaintiff was at that time suffering from anxiety which was precipitated by the accident of January 2, 1962; that this anxiety gave rise to the physical pains complained of by her; and that her condition was of a disabling nature and would exist for an indefinite time.
In view of the above opinion by Dr. Morin and the case of Goodley v. Brunet, supra, and the cases cited therein, this Court is of the opinion that plaintiff has shown a causal connection between her present condition and the accident of January 2, 1962, and that she has proved her case with sufficient certainty to allow her to recover herein.
The trial court properly rejected the demands of plaintiff for attorney’s fees and penalties.
For the reasons assigned, the judgment of the district court is affirmed at appellant’s costs.
Affirmed.